# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 50185 | **DATE** | 7/2/2010 |
| **CASE TITLE** | Mark Sterling vs. Board of Education of the Rockford Public Schools, District #205 | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion for summary judgment is granted as to the sex (Count I) and race (Count II) discrimination claims and judgment is entered in favor of defendant and against plaintiff on these claims. The state law breach of contract claim (Count III) is dismissed without prejudice. Defendant's motion to strike is denied.

*Philip G. Reinhard*

■ [ For further details see text below.]

Electronic Notices.

## STATEMENT

Plaintiff, Mark Sterling, brings this action against defendant, The Board of Education of the Rockford Public Schools, District 205, alleging sex discrimination (Count I) and race discrimination (Count II) both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and a state law breach of contract claim (Count III). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. Defendant moves for summary judgment and to strike certain matter submitted by plaintiff in response to defendant's summary judgment motion.

Defendant moves to strike plaintiff's affidavit, plaintiff's attorney's affidavit, plaintiff's LR56.1 statement of additional facts and plaintiff's response to defendant's statement of facts. Motions to strike are disfavored. See Sherden v. Cellular Advantage, Inc., No. 07-CV-1006, 2009 WL 1607598, * 2 (N.D. Ill. June 9, 2009) (Dow, J.). In the course of ruling on a summary judgment motion the court will review the parties' statements of material fact and not consider "any arguments, conclusions, and assertions that are unsupported by the documented evidence," id. at * 1, where a party has noted its objection in its response to the proffered

"undisputed fact." See LR56.1(b)(3)(A) and (a)(3).

Plaintiff is a white male. He was a non-tenured teacher at defendant's Auburn High School. His contract was not renewed at the end of the 2005-06 school year. Plaintiff was a special education teacher. At the beginning of the 2005-06 school year Janice Hawkins, an African-American woman, became Auburn's principal. During this school year Roger Buswell, Jamie Cadengo and Joanna Sharp served as assistant principals at Auburn.

On February 14, 2006, Theresa Harvey, a special education administrator for defendant, issued a memorandum to plaintiff notifying him that ten of his individual education plans ("IEP") for special education students were past due. On March 6, 2006, Harvey issued plaintiff a letter of reprimand for failure to complete the necessary IEPs. On March 8, 2006, Harvey notified plaintiff that the IEPs of two additional special education students were past due.

Of the non-tenured special education teachers at Auburn in the 2005-06 school year, Jill Mellnick completed 12 of 12 of her IEPs by the initial deadline established by the defendant, Stamatia Fanopolou timely completed 12 of 14 of hers, Kristen Orde Rademaker timely completed 7 of 8 of hers, Matt Theisen timely completed 8 of 18 of his, plaintiff timely completed 2 of 15 of his and Kent Griswold timely completed 0 of 14 of his. Of these non-tenured special education teachers at Auburn, Fanopolou, Theisen, Griswold, and plaintiff did not get rehired. Mellnick and Orde Rademaker did get rehired.

Buswell was in plaintiff's classroom on February 6, 7, and 15, 2006. Buswell prepared an evaluation form for plaintiff in conjunction with these classroom visits. Buswell found plaintiff did not have a lesson plan prepared for February 6, 2006. On the next day, February 7, 2006, Buswell found the lesson plans to be inadequate because the lessons specified for each day did not include learning goals/objectives, did not indicate what material was going to be taught, how it would be taught, or the manner in which student understanding of the material would be assessed.

Hawkins's original list of non-tenured teachers not to be rehired included five women and five men.

She later added plaintiff once she learned he was not tenured. Four of the teachers on the original list were, like plaintiff, special education teachers. One of the women was removed from the list when it was determined she was tenured.

Hawkins testified in her deposition that she had seen plaintiff yelling at kids "[f]ace to face, spit flyin', red-faced, in front of others." Def. LR56.1, Exh. J., p. 14. She testified he was "a person who keeps conflict going." Id. As an example she cited his being "confrontational and unsupportive" concerning Theresa Harvey's directives relating to the IEPs. Id. at 15. When Hawkins and her assistant principals discussed plaintiff in a meeting on the subject of which nontenured teachers should not be renewed, Hawkins testified Cadengo's concern "was that he was not good for kids, he doesn't know how to handle kids or talk to kids." Id. at 74. Hawkins's "issues him were lack of respect for [Hawkins], for Theresa Harvey." Id. at 74-75. She did not remember Buswell or Sharp saying anything specifically about plaintiff. They "just all agreed that he needed to go." Id. at 75.

Altogether, there were 34 non-tenured teachers at Auburn in the 2005-06 school year. Of those, 22 were rehired for the following year. There were 10 males and 12 females rehired. All but two of the rehires were white. Two were African American. Of those not rehired, eight were men and four were women. All of them were white.

Craig Shaver, the teachers' union building representative for Auburn, testified in his deposition that after filing a grievance as to the evaluations and evaluation process for plaintiff and Matt Theisen, he had a conversation with Buswell, who had performed the evaluations on plaintiff and Theisen. Shaver told Buswell during this conversation that Shaver "didn't think [Buswell] was really responsible for what had been done and that he had been told to do this." Pl. LR56.1 Exh. M,. p. 46-47. Shaver testified that Buswell "shook his head affirmatively and said 'Yes' or something like that." Id. at 47. By "this" Shaver meant "to get rid of these guys" and to give a negative evaluation. Id. Shaver did not testify that Buswell ever said he understood "this" to mean getting rid of plaintiff and Theisen or the negative evaluations. Buswell testified

# STATEMENT

he did not recall a conversation in which Shaver said these things to him or Buswell gave such a response. Pl. LR56.1 Exh. N., p. 12.

Buswell also testified in a deposition that "if I was principal I probably would not have nonrenewed [plaintiff]." Def.. LR56.1 Exh. C, p. 119. However, he testified that no one told him to give plaintiff a poor evaluation and that it was his opinion at the time he evaluated plaintiff that he had provided an accurate evaluation of plaintiff's performance. Id. at 119-21. Buswell assisted plaintiff in obtaining another teaching position in a different school district by talking with Buswell's former college classmate who was an administrator there. Id. at 123.

Plaintiff testified in his deposition that at the time Buswell informed him he was not going to be renewed, Buswell told him "I'm sorry, I couldn't"– "I was told to do it, I had no choice" and nodded toward the principal's office. Pl. LR56.1, Exh. A, p. 151-52.

To avoid summary judgment on his sex and race discrimination claims, plaintiff "must either point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue (the "direct" method) or establish a prima facie case under the McDonnell Douglas formula (the "indirect method")." Egonmwan v. Cook County Sheriff's Dept., 602 F.3d 845, 849-50 (7th Cir. 2010). Plaintiff asserts he has presented enough evidence under the direct method to sustain his sex discrimination claim and that he has made a prima facie case under the indirect method for both race and sex discrimination.

Since plaintiff is a white man, this is a reverse discrimination action. In order to establish a prima facie case of reverse discrimination under the indirect method, plaintiff must show that 1) background circumstances demonstrate that defendant has a reason or inclination to discriminate invidiously against whites or men or evidence that there was something "fishy" about the facts at hand; 2) he was performing his job up to his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) he was treated less favorably than similarly-situated blacks or females. Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2007). Once a prima facie case is established, the burden shifts to the defendant to show a legitimate non-

discriminatory reason for the adverse action. Id. If the defendant does so, then "the burden returns to the plaintiff to show that the defendant's explanation was pretextual." Id. Where the plaintiff argues that he performed satisfactorily but the employer is lying about the business expectations for the position, "the second prong and the pretext issue seemingly merge because the issue is the same-whether the employer is lying." Hague v. Thompson Distribution Co., 436 F.3d 816, 823 (7th Cir. 2006). The court may then analyze the issue of pretext and the second prong together. Id. Pretext means a lie rather than a mistake. Id. Plaintiff must show that defendant's reason for not rehiring him was a lie not just an error. Id.

Plaintiff argues the facts are sufficiently "fishy" to meet the first prong of the test. Plaintiff cites his history of good evaluations prior to Hawkins taking over as principal, the failure of defendant to follow the requirements for non-tenured teacher evaluations set forth in the collective bargaining agreement ("CBA") between defendant and the teachers' union, and the fact that, aside from first-year non-tenured teachers, the only non-tenured teachers recommended for non-renewal by Hawkins were four white males in their last year of non-tenured status.

However, a look at the record does not show these facts to be particularly "fishy." It is not unusual for a change in evaluator to result in a change in evaluation. Of the four white men in their final year before tenure who were not renewed, the three who were special education teachers had the lowest on-time completion percentage for IEPs based on the original deadline. The evidence does not show that laxness in evaluating non-tenured teachers was confined to non-tenured men or Caucasians. Plaintiff has not established facts that show defendant has a reason or inclination to discriminate against men or Caucasians or that there was something "fishy" about the facts.

Plaintiff has failed to establish that he was performing his job satisfactorily or that defendant is lying about the business expectations for the job and that his purported unsatisfactory performance was a pretext for discrimination. He also has failed to offer similarly situated female or black employees who were treated more favorably. He does not deny that Buswell gave him a negative evaluation, or that he did not submit his

| STATEMENT |
|---|

IEPs as directed by the defendant.

Plaintiff maintains he completed all of his required IEPs prior to the federally-mandated annual deadlines and argues, in a footnote, that defendant's IEP deadlines were wrong, not in accordance with federal law, and, therefore, an improper basis for termination. Plaintiff is incorrect but it is irrelevant, anyway. 20 U.S.C. § 1414 (d) (4) (A) (i) provides that an IEP shall be reviewed "periodically, but not less frequently than annually." Plaintiff asserts 20 U.S.C. § 1414 (a) (2) (B) (i) "mandates that students' IEPs shall be reevaluated 'not more frequently than once a year' and 'at least once every three years.'" However, § 1414 (a) (2) (B) (i) deals with the reevaluation of the child to determine whether the child is or remains a "child with a disability" and, therefore, eligible for services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("Act") It does not deal with when IEPs (which are required for a child who has been determined to be a child with a disability under the Act) are to be reviewed to see how effectively the IEP is working for the child. That review is controlled by § 1414 (d) (4) (A) (i), which requires the review to occur at least annually. Defendant was not violating the Act by setting deadlines for IEP review.

Even if plaintiff were correct, defendant clearly imposed this deadline on all special education teachers. Even if the deadlines set by defendant were somehow incorrect, plaintiff has not presented any evidence that supports a claim they were used as a pretext for discrimination against him because he is a man. There is a strong correlation here between non-tenured teachers who had a low percentage of their IEPs filed by defendant's first deadline and non-tenured teachers who were not rehired. These non-rehires included women. Even if the deadlines set by defendant were incorrect, plaintiff has not presented any evidence that supports a claim they were used as a pretext for discrimination against him because he is a man.

Plaintiff argues Hawkins directed Buswell to give plaintiff a negative evaluation. One piece of evidence supporting this factual claim is the conversation (set forth above) Shaver says he had with Buswell. Taking the facts most favorably to plaintiff, the court assumes this conversation occurred as Shaver testified. But, the conversation does not establish plaintiff was performing his job satisfactorily or that unsatisfactory

performance was merely a pretext for discrimination. At most it shows Buswell agreeing that he was not responsible for the evaluation (and decision not to rehire) and that he was told to do it. It does not indicate who told him to do it or that he disagreed with the evaluation he had given.

Buswell's conversation with plaintiff, as described in plaintiff's deposition, supports the inference that Hawkins told Buswell either to give plaintiff a poor evaluation, or to tell plaintiff he was not being renewed, or both. However, this inference does not mean plaintiff has established the reasons for his nonrenewal were a pretext for discrimination. There is no dispute Hawkins wanted plaintiff nonrenewed. The court takes no position on the appropriateness of her communication with Buswell as it relates to the contractual evaluation process but in the context of plaintiff's discrimination claims it does not carry the day. This evidence does not establish that defendant's assertion that plaintiff was not meeting defendant's legitimate expectations was a lie. See Hague v. Thompson Distribution Co., 436 F.3d 816, 823 (7th Cir. 2006).

Under the direct method, "[o]ne type of circumstantial evidence that can demonstrate intentional discrimination is evidence that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment." Jones v. City of Springfield, 554 F.3d 669, 671 (7th Cir. 2009) (internal quotation marks and citation omitted). "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Fane v. Locke Reynolds, LLP, 480 F.3d 534, 540 (7th Cir. 2007).

Plaintiff has not presented evidence of similarly situated employees who were treated more favorably. None of the non-tenured women special education teachers who were rehired had as low a percentage of on-time IEPs as plaintiff or the other white men who were not rehired. The lowest percentage timely completed by a non-tenured woman was 78% while the highest percentage among the non-tenured white men who were

| STATEMENT |
|---|

not rehired was plaintiff's 44%. Plaintiff's discrimination claims fail under the direct method.

Plaintiff also claims defendant breached its contract with him. This is a state law claim. When all federal claims are disposed of prior to trial, the preferred course for any remaining state law claims is to dismiss them without prejudice so they can be adjudicated in state court. See <u>Payne for Hicks v. Churchich</u>, 161 F.3d 1030, 1043 (7th Cir. 1998). Accordingly, the court declines to exercise supplemental jurisdiction over the breach of contract claim (Count III) and dismisses it without prejudice.

For the foregoing reasons, defendants motion for summary judgment is granted as to the sex (Count I) and race (Count II) discrimination claims and judgment is entered in favor of defendant and against plaintiff on these claims. The state law breach of contract claim (Count III) is dismissed without prejudice. Defendant's motion to strike is denied.